## ISBRANDSTEN–MOLLER CO., Inc., v. 452,413 FEET, B. M., OF LUMBER.

(District Court, S. D. Florida. April 12, 1926.)

No. 2283.

Shipping ⬡=184—Libel for delay in unloading held required to show compliance with custom house formalities to show commencement of lay days (Tariff Act 1922, §§ 433, 448, 450 [Comp. St. Ann. Supp. 1923, §§ 5841e2, 5841e17, 5841e19]).

Libel for demurrage for charterer's delay in unloading, under charter party providing lay days should commence from time captain reports vessel ready to discharge cargo at or off port, having fulfilled custom house formalities, must show master reported arrival and made formal entry at custom house, showing permit to unload at other than official hours not being enough, in view of Tariff Act 1922, §§ 433, 448, 450 (Comp. St. Ann. Supp. 1923, §§ 5841e2, 5841e17, 5841e19).

Libel by the Isbrandsten-Moller Company against 452,413 feet, board measure, of lumber. On exceptions to libel. Exceptions sustained.

Shutts & Bowen, of Miami, Fla., for libelant.

A. B. & C. C. Small and C. L. Brown, all of Miami, Fla., for respondent.

CALL, District Judge. This is a libel for freight money and demurrage wherein certain lumber, etc., was attached in a proceeding in rem. Exceptions were filed. The vessel was chartered to carry certain cargo from a foreign port to Miami.

The libel alleges the making of a charter party with a certain person of the steamship Gefion to carry a cargo from Nova Scotia to Miami, Fla., wherein the charterer agreed to pay freight on proper delivery of cargo at Miami, Fla., concurrent with discharge; the charterer agreeing to discharge cargo free of any expense to the vessel. The lay days were provided to commence "from the time the captain reports his vessel ready to discharge cargo, at or off ports, having fulfilled custom

house formalities, whether berth available or not available"; that for each day's detention by default of charterer, $200 per day should be paid and a lien upon said cargo was given for freight, dead freight, and demurrage. That pursuant to said charter party the steamship proceeded with cargo from Ingramport, Nova Scotia, to Miami, Fla., consigned to the claimant, and arrived on the 19th of December, 1925. That on the 17th of December, 1925, libelant made application to the collector of customs at the port of Miami to unload cargo during other than official hours and received permit so to do; that thereafter on December 21, 1925, libelant notified the consignee of said cargo that said steamship was ready to discharge said cargo; that said consignee by its own fault did not commence to receive said cargo, until January 11, 1926; that the lay days from December 21st to January 2d, both inclusive, were the lay days provided in the charter party for unloading the cargo, and demurrage at the rate of $200 a day accrued from January 2d; that upon the 16th day of January the consignee refused to pay same, and thereupon libelant in order to preserve its claim ceased discharging cargo, at which time 14 days' demurrage was due libelant. The libel then charges that a certain amount is due for freight on the portion of the cargo discharged and a certain other amount was due for freight on the portion of cargo not discharged.

The libel seeks recovery of the unpaid freight and demurrage accrued and to accrue, from the portion of the cargo not unloaded.

To this libel exceptions were filed by claimant.

It is insisted that the libel does not allege that the custom house formalities were complied with, such as report at the custom house of arrival of said vessel, nor entry of said vessel at the custom house, etc. In argument it is insisted that the libel must allege the compliance with the formalities required by law by the owner of the vessel before the claimant can be put in default on the demurrage claim. The libel is silent as to any steps taken by the master to comply with the requirement of the customs laws from the date of his arrival December 19th to December 21st, when the notice was given the consignee. The only step taken was the securing of the special permit to unload, two days before the arrival of the steamship.

The charter party provides that the lay days should commence from the time the captain reports his vessel ready to discharge cargo at or off ports, having fulfilled custom house formalities.

The formalities are set forth in section 433 (Comp. St. Ann. Supp. 1923, § 5841e2) and others of the Tariff Act of 1922: (1) A report of arrival within 24 hours; (2) formal entry in the custom house, if an American vessel arriving from a foreign port, or if a foreign vessel, within 48 hours. Section 448 of said Tariff Act (section 5841e7) forbids the unloading of any cargo until entry or report of arrival of the vessel and permit for unloading same is issued by the collector. This section provides the method of making a preliminary entry. The only formality complied with according to the libel is that set forth in section 450 (section 5841e19) to permit unlading at night, Sundays, or holidays.

In order to fix the day the lay days began, it would be necessary for the libelant to allege that the terms of the charter party had been complied with, which determined the day. Nowhere do I find any allegation of compliance with these formalities, except to procure the special permit, two days before the arrival of the vessel at or off the port of Miami. Does the procurement of such special permit dispense with the report and entry and permit to unload, after arrival? I think not. The pleading must be taken most strongly against the pleader, and he being silent as to compliance with these formalities, it must be assumed that they were not complied with. If not, can the time of the commencement of the lay days be determined? I read the allegation of the contents of the charter party on this matter as requiring the ship to comply with the statutes as to unlading, required of her officers, before the consignee can be put in default for not unloading within the lay days and then becoming liable to pay demurrage.

The defect may be corrected, if the facts warrant it, by a second amended libel. The exceptions to the amended libel on this ground will be sustained.

There are other exceptions directed to the right of the libelant to recover for freight earned. It does not seem to me that these exceptions are well taken, if the libel is amended to state a cause for demurrage and refusal to pay same. The charter party provided for the payment of the demurrage day by day. But these exceptions need not now be ruled on, as the libel will have to be amended, and the question can then be raised.